# In the United States Court of Federal Claims

No. 14-612C

(E-Filed: March 9, 2022)

| | | |
|---|---|---|
| _____ | ) | |
| DDS HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Motion to Dismiss; RCFC |
| | ) | 12(b)(1); Lack of Subject |
| v. | ) | Matter Jurisdiction; Privity of |
| | ) | Contract; Anti-Assignment Act; |
| THE UNITED STATES, | ) | 41 U.S.C. § 6305(a); 31 U.S.C. |
| | ) | § 3727(a), (b). |
| Defendant. | ) | |
| _____ | ) | |

Stephen B. Hurlbut,[1] Washington, DC, for plaintiff.  Lawrence D. Silverman, of counsel.

David M. Kerr, Trial Attorney, with whom were Brian M. Boynton, Acting Assistant Attorney General, Martin F. Hockey, Jr., Acting Director, Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

OPINION

CAMPBELL-SMITH, Judge.

On August 6, 2021, defendant filed a motion to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC).  See ECF No. 55.  Plaintiff filed a response on September 10, 2021, see ECF No. 56; and defendant filed a reply on September 24, 2021, see ECF No. 57.  The

---

[1] Mr. Hurlbut was attorney of record when plaintiff's response was filed.  See ECF No. 56. He was replaced as attorney of record, however, on October 12, 2021, by Lawrence D. Silverman.  See ECF No. 58 (plaintiff's consent motion to substitute attorney).

motion is now fully briefed, and ripe for decision. The parties did not request oral argument, and the court deems such argument unnecessary.

The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion. For the following reasons, defendant's motion to dismiss for lack of jurisdiction is **GRANTED**.

I.  Background

Plaintiff filed its complaint in this court on July 14, 2014, alleging that defendant breached its contract with plaintiff. See ECF No. 1 (complaint). Plaintiff amended its complaint on November 17, 2014. See ECF No. 10 (amended complaint). In the amended complaint, plaintiff alleges that in May 2008, the Centers for Medicare and Medicaid Services (CMS) and Doctor Diabetic Supply, Inc. entered into the contract at issue for mail-order diabetic medical supplies.[2] See ECF No. 10 at 5; see also ECF No. 55-1 at 5. CMS awarded this contract following the congressional establishment of a competitive bidding program for durable medical equipment and the implementation of that program by the United States Department of Health and Human Services. See ECF No. 10 at 3. The initial contract term was July 1, 2008, to June 30, 2011. See id. On July 15, 2008, two weeks after the contract term began, Congress passed legislation that resulted in the abrogation and termination of the contract. See id. at 5. On March 31, 2010, Doctor Diabetic Supply, Inc. submitted a claim to CMS for damages related to the termination of its contract, which CMS subsequently denied. See ECF No. 55 at 2.

Nearly a year later—on February 11, 2011—between the time that the contract was terminated and when plaintiff filed its complaint in this court, plaintiff, a "group of trusts formed by George Heisel," which owned Doctor Diabetic Supply, Inc., sold the company to Sanare, LLC. ECF No. 10 at 2; see also ECF No. 56-1 at 2 (membership interest purchase agreement). Two days before the sale, on February 9, 2011, Doctor Diabetic Supply, Inc. was converted to a limited liability company (LLC). See ECF No. 55-1 at 31-34 (documents from Florida's Secretary of State signed by George Heisel effecting the conversion). Thus, the operative membership interest purchase agreement is between Sanare, LLC as buyer, DDS Holdings, Inc. as seller, Doctor Diabetic Supply,

---

[2]   In its amended complaint, plaintiff alleges that the parties to the contract were Doctor Diabetic Supply, LLC and the Centers for Medicare and Medicaid Services. See ECF No. 10 at 1, 5. In its response to defendant's motion, however, plaintiff refers to Doctor Diabetic Supply, Inc. See ECF No. 56 at 1. And the contract, attached to defendant's motion, also refers to Doctor Diabetic Supply, Inc. See ECF No. 55-1 at 5. Because defendant's motion challenges plaintiff's jurisdictional facts, the court "may consider relevant evidence in order to resolve the factual dispute," and will therefore rely on the description of the entity in the contract. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988).

LLC, as the company, and George T. Heisel as the "seller representative."  ECF No. 56-1 at 6.

According to plaintiff, at the time of the sale the "representative of [the] trusts, DDS Holdings, Inc.[,] retained the right to pursue the claims set forth in this complaint," ECF No. 10 at 2, as "the successor in interest and representative of the former owners" of Doctor Diabetic Supply, Inc., id. at 1.  The purchase agreement sets forth, in detail, the corporate structure and changes prior to the sale transaction.  See ECF No. 56-1 at 6.  It states as follows:

- The shareholders of DDS Holdings, Inc. chose to organize DDS Holdings, Inc. as a "Subchapter S corporation";

- The shareholders of DDS Holdings, Inc. owned 100 percent of the stock of Doctor Diabetic Supply, Inc.;

- After organizing DDS Holdings, Inc. as an S-corporation, the shareholders transferred all of the stock of Doctor Diabetic Supply, Inc. to DDS Holdings, Inc.;

- Doctor Diabetic Supply, Inc. therefore, became a "wholly owned subsidiary" of DDS Holdings, Inc.;

- Thereafter, DDS Holdings, Inc. converted Doctor Diabetic Supply, Inc. to a limited liability company, and Doctor Diabetic Supply, Inc. became Doctor Diabetic Supply, LLC;

- After these changes were all effected, DDS Holdings, Inc. owned the outstanding membership interests in Doctor Diabetic Supply, LLC.

Id.  The purchase agreement also provides that Sanare would pay DDS Holdings, Inc., "the amount, if any, paid by Medicare to [Doctor Diabetic Supply, LLC] with respect to the Medicare Reimbursement Claim," and would, in addition to providing DDS Holdings, Inc. with notice of any communications about the claim, "use commercially reasonable efforts to assist [DDS Holdings, Inc.] in resolving the Medicare Reimbursement Claim," though any costs incurred by Sanare or Doctor Diabetic Supply, LLC in doing so would be reimbursed by DDS Holdings, Inc.  Id. at 21.

After proceeding with alternative dispute resolution (ADR) through the court, during which the parties exchanged information, defendant filed the instant motion to dismiss.  See ECF No. 55 at 3.  Defendant argues that plaintiff was not a party to the

contract at issue and, therefore, the court lacks jurisdiction over plaintiff's claims.  See id. at 4.  The motion is now fully briefed and ripe for decision.

II.     Legal Standards

Pursuant to the Tucker Act, the court has jurisdiction to consider "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  To invoke the court's jurisdiction, plaintiff must show that its claims are based on a contract "'between the plaintiff and the government.'"  Cienega Gardens v. United States, 194 F.3d 1231, 1239 (Fed. Cir. 1998) (quoting Ransom v. United States, 900 F.2d 242, 244 (Fed. Cir. 1990).  "In other words, there must be privity of contract between the plaintiff and the United States."  Id. (citation omitted).  Privity of contract is necessary to find a waiver of sovereign immunity.  See id. (citation omitted).

When a challenge is mounted pursuant to RCFC 12(b)(1), plaintiff bears the burden of establishing this court's subject matter jurisdiction by a preponderance of the evidence.  See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Cedars-Sinai Med. Ctr. v. United States, 11 F.3d 1573, 1583 (Fed. Cir. 1993).  In reviewing plaintiff's allegations in support of jurisdiction, the court must presume all undisputed facts are true and construe all reasonable inferences in plaintiff's favor.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982); Reynolds, 846 F.2d at 747 (citations omitted).  If, however, a motion to dismiss "challenges the truth of the jurisdictional facts alleged in the complaint, the . . . court may consider relevant evidence in order to resolve the factual dispute."  Reynolds, 846 F.2d at 747.  If the court determines that it lacks subject matter jurisdiction, it must dismiss the complaint.  See RCFC 12(h)(3).

III.    Analysis

A. Plaintiff Has Not Demonstrated Privity of Contract

To establish jurisdiction in this court on the basis of a contract with the government, plaintiff must demonstrate privity of contract with the government.  Cienega Gardens, 194 F.3d at 1239.  To do so, plaintiff must establish that the contract it alleges as the basis for its claims is "between the plaintiff and the government and entitle[s] the plaintiff to money damages in the event of the government's breach of that contract."  Ransom v. United States, 900 F.2d 242, 244 (Fed. Cir. 1990).  Where a motion to dismiss challenges the complaint's jurisdictional allegations, "the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true for purposes of the motion."  Cedars-Sinai, 11 F.3d at 1583 (citations omitted).  In such a

situation, the court "may review evidence extrinsic to the pleadings." Id. at 1584. Here, defendant challenges plaintiff's jurisdictional allegations, and the court, therefore, will review the extrinsic evidence attached to the parties' motions. See ECF No. 55-1; ECF No. 56-1.

Plaintiff has not demonstrated that it was in privity of contract with the government. See ECF No. 55-1 at 5. In its motion, defendant argues that plaintiff's complaint should be dismissed for lack of subject matter jurisdiction because plaintiff "is not a party to the contract it invokes as the source" of jurisdiction. ECF No. 55 at 4. Reviewing the contract, the court agrees with defendant. The contract was executed between the government and Doctor Diabetic Supply, Inc. See ECF No. 55-1 at 5. Plaintiff was not a party to the contract. See id.

Plaintiff responds, however, that defendant "ignores" a sworn declaration "which explained and expanded upon" plaintiff's status. ECF No. 56 at 1 (emphasis in original). According to plaintiff, the declaration shows that plaintiff "became the corporate successor in interest, through reorganization, to [Doctor Diabetic Supply, Inc.'s] interest in the contract at issue." Id. at 2. Defendant disputes this characterization of plaintiff's position. See ECF No. 55 at 5. Defendant contends that, while the interests in Doctor Diabetic Supply, Inc. were transferred to plaintiff prior to the sale of the company, the purchase agreement "does not show that there was ever privity of contract between [plaintiff] and the United States." Id. at 5-6.

Plaintiff's explanation that it is "the corporate successor in interest, through reorganization, to [Doctor Diabetic Supply, Inc.'s] interest in the contract at issue," is insufficient to establish the necessary privity of contract. ECF No. 56 at 2. The privity of contract existed between Doctor Diabetic Supply, Inc. and the government only. See ECF No. 55-1 at 5. That plaintiff has owned Doctor Diabetic Supply, Inc. does not create the requisite privity.[3] See Ogunniyi v. United States, 124 Fed. Cl. 525, 532 (2015) (holding that an owner of a company is not in privity of contract with the government by virtue of the company's contract, "regardless of his role in the company"). Thus, the existence of privity of contract between the government and Doctor Diabetic Supply, Inc. does not establish this court's jurisdiction as to plaintiff.

---

[3] To the extent plaintiff's argument intends to imply that plaintiff is a third-party beneficiary of the contract, and therefore "'stands in the shoes of a party within privity,'" Sullivan v. United States, 625 F.3d 1378, 1380 (Fed. Cir. 2010) (quoting First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1289 (Fed. Cir. 1999)), "shareholders are not third party beneficiaries," Glass v. United States, 258 F.3d 1349, 1354 (Fed. Cir. 2001). See also ECF No. 56-1 at 6 (establishing that plaintiff was the sole shareholder of Doctor Diabetic Supply, Inc.).

B.  Plaintiff Was Not Validly Assigned the Claim at Issue

Because plaintiff was not a party to the original contract such that it can demonstrate privity of contract to establish jurisdiction, the court turns to plaintiff's claim that jurisdiction in this court arises out of privity created by plaintiff's position as a "successor in interest" to Doctor Diabetic Supply, Inc.'s "interest in the contract at issue." ECF No. 56 at 2.  In the court's view, this argument amounts to a contention that plaintiff was assigned Doctor Diabetic Supply, Inc.'s claim.

It is well established that an assignment of both contracts with—and claims against—the government is generally prohibited.  See Fireman's Fund Ins. Co. v. England, 313 F.3d 1344, 1349 (Fed. Cir. 2002) (explaining the legislation "commonly called the Anti-Assignment Act"); see also Delmarva Power & Light Co. v. United States, 542 F.3d 889, 892-93 (Fed. Cir. 2008) (quoting and citing 31 U.S.C. §3727(a)(1), (b), which prohibits the assignment of a claim against the United States).  The Anti-Assignment Act consists of two legislative components that together prohibit the assignment of both contracts and claims.  See 41 U.S.C. § 6305(a); 31 U.S.C. § 3727(a), (b); see also Fireman's Fund, 313 F.3d at 1349 ("What is commonly called the Anti-Assignment Act consists of two statutory provisions.").  The first provides that "[t]he party to whom the Federal Government gives a contract or order may not transfer the contract or order, or any interest in the contract or order, to another party." 41 U.S.C. § 6305(a).  Similarly, the second provides that "any part of a claim against the United States Government or . . . an interest in the claim," may only be assigned "after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." 31 U.S.C. § 3727(a), (b).  Any assignment in violation of this legislation is void.  See Westinghouse Elec. Co. v. United States, 56 Fed. Cl. 564, 569 (2003).

There are, however, two exceptions to the general prohibition.  First, an assignment "by operation of law" is exempt from the prohibitions of the Anti-Assignment Act.  Tuftco Corp. v. United States, 614 F.2d 740, 745 (Ct. Cl. 1980).  This includes transfers made by "interstate succession or testamentary disposition, . . . by subrogation to an insurer, . . . . [or] when transfer of a claim or contract is effected by consolidation or merger to the successor of a claimant corporation." Id. (citations omitted).  "[T]he 'operation of law' exception generally involves situations where, for all intents and purposes, the contract with the Government continues with essentially the same entity, which has undergone a change in its corporate form or ownership." L-3 Comms. Integrated Sys., L.P. v. United States, 84 Fed. Cl. 768, 777 (2008) (citations omitted).  And second, the government may waive the provisions of the Anti-Assignment Act by recognizing the assignment.  See Tuftco, 614 F.2d at 745; see also Delmarva, 542 F.3d at 893-94 ("We see no valid reason why the government should not also be able to waive the Anti-Assignment Act's prohibition.").  The recognition may be "either express[] as by novations or implicit[] as by ratification or waiver." Westinghouse, 56 Fed. Cl. at 569.

Accordingly, to establish jurisdiction, plaintiff must demonstrate that Doctor Diabetic Supply, Inc.'s claim was validly assigned to it through an exception to the general prohibition against assignment. To do so, plaintiff must show that either the assignment was made "by operation of law," including by "corporate merger[], consolidation[], [or] reorganization[], where in essence the contract continues with the same entity, but in a different form," or that the government "waive[d] the effect of the statute by recognizing the validity of the contract and the assignment after the fact." Id. (citations omitted).

Plaintiff contends that the purchase agreement for the sale of Doctor Diabetic Supply, Inc. "specifically recognizes that all contract claims in this lawsuit were retained by [plaintiff], the seller, and not transferred to the buyer." ECF No. 56 at 2 (citing ECF No. 56-1 at 21) (emphasis in original). According to plaintiff, its retention of the contract claim was exempt from the Anti-Assignment Act because the corporate reorganization which preceded the sale could be a transfer "by operation of law," and defendant was not prejudiced by the transfer. Id. at 4 (quoting L-3 Comms., 84 Fed. Cl. at 777). According to defendant, however, the operation of law exception to the Anti-Assignment Act "does not apply to [plaintiff's] brief ownership of Doctor Diabetic Supply," because plaintiff "does not assert that it is essentially the same entity as Doctor Diabetic Supply," and "does not allege that Doctor Diabetic Supply transferred any assets to [plaintiff]" while plaintiff owned it. ECF No. 57 at 2.

The court agrees with defendant that Doctor Diabetic Supply, Inc.'s claim was not validly assigned to plaintiff by operation of law. The operation of law exception "generally involves situations where, for all intents and purposes, the contract with the Government continues with essentially the same entity, which has undergone a change in its corporate form or ownership." L-3 Comms., 88 Fed. Cl. at 777. In L-3 Communications, the court held that the plaintiff, which had purchased a business unit from Raytheon that had incurred bid and proposal costs that it sought from the government, held the claim for those costs. Id. at 778. The court reasoned that the business unit transferred to L-3 Communications "was the same business unit," and Raytheon disclaimed any right to the costs. Id. at 777. The court concluded that the "claim was passed to a single successor-in-interest, [that] the predecessor entity [ ] expressly abjured any claim for these costs," and that the assignment, therefore, "occurred by operation of law." Id. (internal quotation marks omitted).

Here, plaintiff is a distinct entity and is not "essentially the same entity" as Doctor Diabetic Supply, Inc. such that the claim validly transferred to plaintiff by operation of law. Id. Review of the reorganization detailed in the purchase agreement reveals that Doctor Diabetic Supply, Inc. underwent a "change in its corporate form" when it became an LLC, and a change in ownership twice, first when its stock was transferred to plaintiff and again when it was sold to Sanare, LLC. Id.; see also ECF No. 56-1 at 6. Taking each

7

of the changes in turn, the claim validly transferred by operation of law to Doctor Diabetic Supply, LLC, when the company simply changed corporate form from Doctor Diabetic Supply, Inc. to an LLC.  See L-3 Comms., 88 Fed. Cl. at 777.  The stock transfer to plaintiff, however, did not constitute a "merger, consolidation, or reorganization" of Doctor Diabetic Supply, Inc. such that the claim validly transferred to plaintiff.  See id.  Unlike in L-3 Communications, where a business unit associated with a claim was sold to a new owner and the claim stayed with the business unit, Doctor Diabetic Supply, Inc. was a separate corporate entity whose stock was transferred to plaintiff, making it a wholly-owned subsidiary of plaintiff.  See ECF No. 56-1 at 6.  Plaintiff does not allege that plaintiff and Doctor Diabetic Supply, Inc. or LLC, merged or otherwise became the same corporate entity.  See generally ECF No. 10; ECF No. 56.  Therefore, when the ownership of Doctor Diabetic Supply changed, the claim remained with Doctor Diabetic Supply, and did not transfer to the new corporate owner of the company—plaintiff.  Rather, as in L-3 Communications, the claim remained with Doctor Diabetic Supply despite the change in ownership.

Even if the claim had transferred by operation of law to plaintiff with the sale of stock to plaintiff, plaintiff's argument that in the second change in ownership—the sale to Sanare—it "retained" the contract claim in the transaction is unavailing.  See ECF No. 56 at 2 (emphasis in original).  Such a retention would be an assignment of a claim expressly forbidden by the statute.  See Westinghouse, 56 Fed. Cl. at 569-70 ("Where, '[t]he assignment of [a] government contract as an incident to the sale of the assets of a business is not . . . [a] transfer by operation of law[, it is] barred by the [Anti-Assignment Act].'") (quoting Appeals of Mancon Liquidating Corp. Intercontinental Mfg. Co., Inc., ASBCA No. 18304, 1974 WL 1675 (1974)).  Because the transfer of the claim to plaintiff during the sale was an affirmative transfer—rather than by operation of law—the assignment is invalid.  See id.; see also L-3 Comms., 88 Fed. Cl. at 777.

Likewise, defendant did not waive its objection to the transfer.  Plaintiff argues that defendant "waived any lack of privity defense," ECF No. 56 at 4, because it "has been aware of the transfer for over six years and never addressed or objected to it," id. at 5.  Defendant contends that it did not waive its objection to plaintiff's transfer because plaintiff "does not allege that it informed CMS of the sale of Doctor Diabetic Supply in advance and only when [defendant] saw the terms of the sale (during [ADR]) did it become clear that there is no evidence to support [plaintiff's] allegation" that it validly retained the claim.  ECF No. 57 at 5.

In the court's view, plaintiff has not pointed to any evidence that defendant recognized the assignment outside of its assertion that defendant "has been aware of the transfer for over six years and never addressed or objected to it." ECF No. 56 at 5.  Where the court has previously found that the government waived an objection to an assignment, there has been considerably more evidence that the government was aware of

the assignment and took steps that validated the assignment.  See, e.g., Tuftco, 614 F.2d at 745-46 (holding that waiver occurred where the company had contacted the contracting officer prior to and immediately after the assignment, and the contracting officer acknowledged it in writing).  Thus, without more, and taking into account the totality of the circumstances, the court cannot credit plaintiff's assertion that delay alone constitutes waiver.  See Liberty Ammunition, Inc. v. United States, 101 Fed. Cl. 581, 588 (2011) ("Courts have rejected a simple litmus test 'to determine whether the government has waived the Anti-Assignment Act,' looking instead to 'the totality of the circumstances.'") (quoting Haddon Hous. Assocs., LLC v. United States, 99 Fed. Cl. 311, 322 (2011)).  Plaintiff, therefore, has also failed to demonstrate privity of contract through assignment by waiver.

Because plaintiff demonstrated neither outright privity of contract with the government nor a valid assignment of any claims that would constitute the necessary privity, this court lacks jurisdiction to hear plaintiff's claims.  Plaintiff argues, however, that RCFC 17(a) requires that the court grant plaintiff "the opportunity" to join the real party in interest.  ECF No. 56 at 6.  Rule 17(a)(3) prohibits the court from dismissing a case "for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  Defendant's motion to dismiss was filed August 6, 2021, and plaintiff filed its response on September 10, 2021.  See ECF No. 55; ECF No. 56.  While the court is "lenient in permitting ratification, joinder, or substitution," First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1289 (Fed. Cir. 1999), the rule is intended to protect "the interests of justice," and an "honest mistake" merits leniency to "insure against forfeiture or injustice," Federal Rules of Civil Procedure (FRCP) 17 Advisory Committee Notes.[4]  In the court's view, and under the circumstances presented here, the six months since defendant lodged its objection constitute the "reasonable time" required by the rule and is sufficient to protect against the honest mistake contemplated by the rule.  RCFC 17(a)(3); FRCP 17 (Advisory Committee Notes).  Plaintiff's complaint, therefore, must be dismissed.

IV.   Conclusion

Accordingly, for the foregoing reasons:

(1)   Defendant's motion to dismiss, ECF No. 55, is **GRANTED**; and

---

[4]   "In general, the rules of this court are closely patterned on the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil Procedure is relevant to interpreting the rules of this court."  Champagne v. United States, 35 Fed. Cl. 198, 205 n.5 (1996).

(2)  The clerk's office is directed to **ENTER** final judgment in favor of defendant **DISMISSING** plaintiff's amended complaint in its entirety, without prejudice.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith  
PATRICIA E. CAMPBELL-SMITH  
Judge
